UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|  |  |
|---|---|
| MARSHA KENNEDY, as Administrator of the Estate of Dillon Raymond Teague,<br><br>Plaintiff,<br><br>v.<br><br>GASTON COUNTY, a North Carolina Municipal Corporation; ALAN G. CLONINGER, in his official capacity as Gaston County Sheriff; CHAD HAWKINS, in his official capacity as Gaston County Sheriff; BECKY CAUTHRAN, in her official capacity as deputy sheriff of Gaston County,<br><br>Defendants. | **COMPLAINT**<br><br>**(JURY TRIAL REQUESTED)** |

NOW COMES the Plaintiff, by and through counsel, and says and alleges as follows:

**PARTIES**

1. Dillon Raymond Teague died on 3 August 2022.

2. Marsha Kennedy was appointed Administrator of the Estate of Dillon Raymond Teague by the Gaston County Clerk of Court. Marsha Kennedy, as Administrator of the Estate of Dillon Raymond Teague, brings this action to recover damages for the personal injuries and wrongful death of Dillon Raymond Teague, pursuant to N.C. Gen. Stat. § 28A-18-1 and N.C. Gen. Stat. § 28A-18-2.

3. Defendant Alan G. Cloninger (hereinafter "Sheriff Cloninger") is a citizen of North Carolina and resident of Gaston County. This action is brought against Sheriff Cloninger in his official capacity for all actions and/or inactions referenced in this complaint that

1

occurred while he served as Gaston County Sheriff. Upon information and belief, Defendant's address for service of process is P.O. Box 550961, Gastonia, North Carolina 28055.

4. Defendant Chad Hawkins (hereinafter "Sheriff Hawkins") is a citizen of North Carolina and resident of Gaston County. Sheriff Hawkins is the current sheriff of Gaston County. This action is brought against Sheriff Hawkins in his official capacity as Gaston County Sheriff. As the successor in interest to the office of Gaston County Sheriff following Sheriff Cloninger's departure, Sheriff Hawkins is liable for all conduct identified in this complaint and otherwise as provided by law. Hawkins' address for service of process is 425 Dr. Martin Luther King Jr. Way, Gastonia, North Carolina 28052.

5. Defendant Becky Cauthran is a citizen of North Carolina and resides in Gaston County. This action is brought against Defendant Cauthran in her official capacity as a Gaston County deputy sheriff and jail administrator. Defendant's address for service of process is 402 Lakewood Drive, Gastonia North Carolina 28056.

6. At all relevant times herein, Defendant was an agent and/or employee of Defendants Cloninger, Hawkins, and/or Gaston County. Defendant Cauthran acted within the course and scope of her employment and/or agency. Therefore, her actions, inactions, deeds, misdeeds, and negligence is imputed to Defendants Cloninger, Hawkins, and/or Gaston County under the law of agency and the doctrines of *respondeat superior*, ratification and/or condonation.

7. Additionally, other deputy sheriffs, jailers, officers, medical staff, and/or other individuals unnamed herein and working at the Gaston County jail during the times referenced in this complaint, were the actual, apparent and/or ostensible agents of Defendants Cloninger,

Hawkins, and/or Gaston County and were acting within the course and scope of their employment and/or agency. Therefore, their actions, inactions, deeds, misdeeds, and negligence is imputed to Defendants Cloninger, Hawkins, and/or Gaston County under the law of agency and the doctrines of *respondeat superior*, ratification and/or condonation.

8. Defendant Gaston County is a municipal corporation organized and existing under the laws of the State of North Carolina. The County's registered agent for service of process is the County Manager, Kim Eagle, who is located at P.O. Box 1578, Gastonia, North Carolina 28053.

9. At all relevant times herein, the Defendants and/or their respective designees were acting under color of law, that is, under the color of the constitution, statutes, laws, rules, regulations, customs, and usage of the State of North Carolina.

10. At all relevant times herein, Defendants Cloninger, Hawkins, Cauthran, and Gaston County purchased and/or maintained liability insurance, thereby waiving any and all claims to sovereign immunity and/or governmental immunity in accordance with North Carolina law, including N.C. Gen. Stat. § 153A-435.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiff's claims, in part, are founded upon the laws of the United States. Furthermore, this Court can exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C.§ 1367.

12. This Court has personal jurisdiction over Defendants because each is a citizen of North Carolina and the tortious conduct for which Plaintiff seeks relief occurred in this State. This Court can also exercise personal jurisdiction over Defendants in accordance with

Federal Rule of Civil Procedure 4(k)(1)(A).

13. Venue is appropriate in the Western District of North Carolina because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND FACTS

14. The Gaston County Jail opened on November 1, 1999. The jail has over 160,000 square feet and has a total bed capacity of 488 with an operating inmate capacity of 440.

15. Despite its operating capacity of 440 inmates, the Gaston County jail routinely kept 650 inmates on a daily basis.

16. Defendant Gaston County established, acquired, erected, repaired, maintained, and/or otherwise operated the Gaston County jail under N.C. Gen. Stat. § 153A-218.

17. Defendant Gaston County is responsible under N.C.G.S. § 153A-224 for ensuring the Gaston County jail's custodial personnel provided continuous supervision to protect prisoners from harm and to be informed of the prisoners' general health and medical needs.

18. Defendant Gaston County was responsible under N.C.G.S. § 153A-225 for developing an adequate medical plan to provide medical care to prisoners at the Gaston County jail, including medical supervision of prisoners and emergency medical care for prisoners to the extent necessary for their health and welfare.

19. The Gaston County jail was equipped with an on-site medical unit, with medical staff available 24 hours a day to provide medical care to inmates in the jail.

20. During the year 2022, Defendant Alan Cloninger served as the Gaston County Sheriff, having been first elected to that position in 2004.

21. By virtue of his position, Sheriff Cloninger was under a legal duty to comply with North Carolina law in the operation and maintenance of the Gaston County jail, including N.C. Gen. Stat. § 162-22 and N.C. Gen. Stat. § 162-24.

22. Under N.C. Gen. Stat. § 162-24, Sheriff Cloninger was under a non-delegable legal duty to provide supervision of prisoners to protect their safety, security, health and welfare, and to provide medical care to prisoners at the Gaston County jail.

23. Under 42 U.S.C. § 1983, Defendants Gaston County, Sheriff Cloninger, and/or Sheriff Hawkins served as the final policymaker for the Gaston County jail, and were charged with the task of creating appropriate policy to ensure the systematic and appropriate supervision of inmates.

24. Under N.C. Gen. Stat. § 153A-224, Sheriff Cloninger was also under a legal duty to provide continuous custodial supervision of all inmates held in the Gaston County jail and to be at all times informed of the prisoners' general health and emergency medical needs. Sheriff Cloninger was under a duty to keep each prisoner "protected" while in the Gaston County jail.

25. Under N.C. Gen. Stat. § 162-55, Sheriff Cloninger and his employees and/or agents were prohibited from "do[ing], or caus[ing] to be done, any wrong or injury to the prisoners committed to his custody, contrary to law."

26. At all relevant times, Defendants knew or should have known that inmates incarcerated at the Gaston County jail were at high risk for medical emergencies, including withdrawal, overdose, and suicide.

27. In the year 2022, Defendant Cauthran was employed by Defendants Cloninger and/or Gaston County and served as administrator of the Gaston County jail.

28. Upon information and belief, Defendant Cloninger assigned Defendant Cauthran supervisory responsibility for the Gaston County jail, making her the "keeper" of the jail under N.C.G.S. § 162-22. Alternatively, Defendant Cauthran assisted Defendant Cloninger in operating the jail under N.C.G.S. § 162-24.

29. Under 10A NCAC 14J .0601 of the North Carolina Administrative Code, a jail shall have an officer make supervision rounds and observe each inmate at least two times within a 60 minute time period on an irregular basis and not more than 40 minutes between rounds. Supervision rounds shall be conducted 24 hours a day, 7 days per week.

30. Upon information and belief, Defendants did not have a formal jail policy that complied with the mandate of 10A NCAC 14J .0601 of the North Carolina Administrative Code.

31. Upon information and belief, Defendants had a custom of failing to refer arrestees in need of urgent medical care and attention and to supervise pretrial inmates in accordance with the standards of the profession, the North Carolina General Statutes, and the North Carolina Administrative Code.

32. Upon information and belief, Defendants also had a custom of failing to provide sufficient competency-based training for detention facility officers and other agents in recognizing when an inmate required immediate medical intervention.

33. On July 30, 2022, Dillon Raymond Teague ("Mr. Teague") was placed as a pretrial detainee at the Gaston County jail. Mr. Teague was being held on misdemeanor offenses and a probation violation.

34. Defendants knew or should have known that Mr. Teague had a medical history consistent with heroine addiction and displayed symptoms of withdrawal, thereby necessitating constant supervision.

35. On August 3, 2022 at around 6:00 a.m., Mr. Teague suffered a medical emergency. Mr. Teague called for help from deputy jailers, but his calls for assistance were ignored.

36. Around 6:20 a.m., Mr. Teague was lying on the bottom bunk when he stood up and went into cardiac arrest.

37. Around 6:54 a.m., Mr. Teague was transported to Caromont Regional Medical Center.

38. At 7:03 a.m., Mr. Teague died. He was 29 years old.

39. After Mr. Teague's death, an investigation by the North Carolina Division of Health Services Regulation found that jail officers were not supervising inmates as required by the North Carolina's Administrative Code, including 10A NCAC 14J .0601.

40. Under the Administrative Code, jail officers are required to check on inmates at least twice an hour with no more than 40 minutes between rounds.

41. The Division of Health Services Regulation found that on August 2, 2022, in Mr. Teague's block, guards missed two supervision rounds around noon. At other times that day, guards in Mr. Teague's block did their rounds, but they left inmates alone for more than 40 minutes at a time.

42. According to hand-written notes provided by Defendant Cauthran, a review of the applicable surveillance video revealed that two supervision rounds were missed on Mr. Teague's block. As a result of these failures, Defendants took disciplinary action of the jailers involved.

43. As part of the investigation by the Division of Health Services Regulation, Defendant Cauthran also admitted that inmates in Teague's section were left alone for more than 40 minutes at a time. Defendant Cauthran also acknowledged that guards were leaving inmates alone for more than 40 minutes at a time. Defendant Cauthran stated that "policy and procedure was changed to reflect this rule and jail staff were notified."

44. Defendants' failure to keep continuous custodial supervision of Mr. Teague was a direct and proximate cause of Mr. Teague's death.

45. Other inmates have died as a result of Defendants' failure to implement a reasonable custom, practice, and/or policy regarding inmate supervision and ensure compliance with North Carolina's Administrative Code.

46. On or about August 3, 2022, at or around 6:01 p.m., Keith Elmore was booked into the Gaston County jail on misdemeanor charges of assault on a female and communicating threats. At 6:40 p.m., Elmore was found in a cell with a sock wrapped around his neck. He later died on August 7, 2022.

47. Defendants' failure to keep continuous custodial supervision of Mr. Elmore was a direct and proximate cause of Mr. Elmore's death.

48. Jordan Moses died on October 7, 2022. Upon information and belief, Defendants' failure to keep continuous custodial supervision of Mr. Moses was a direct and proximate cause of Mr. Moses's death.

49. On or around November 16, 2022, Jason Pettus was an inmate at the Gaston County Jail. Jason was being held on charges of possession of stolen property, driving while licensed revoked, and misdemeanor larceny. His bond was $1,000.

50. On November 21, 2022, a guard checked on Pettus at 11:48 p.m. At 12:10 a.m. on November 22, 2022, Mr. Pettus was found dead, having hung himself with a sheet. Upon information and belief, Defendants' failure to keep continuous custodial supervision of Mr. Pettus was a direct and proximate cause of Mr. Pettus's death.

## FIRST CLAIM FOR RELIEF
### Negligence and/or Gross Negligence

8

51. Plaintiff incorporates by reference and re-alleges each of the prior allegations as if fully set forth herein.

52. N.C. Gen. Stat. § 153A-224 is a safety statute expressly enacted to protect a pre-trial detainee like Mr. Teague whose liberty has been taken and who is confined in a local detention facility.

53. The Gaston County jail is a local confinement facility for the purposes of N.C. Gen. Stat. § 153A-224.

54. By virtue of his status in the Gaston County jail, Defendants owed Mr. Teague a legal duty to act reasonably under the circumstances and otherwise as provided by law. Defendants breached this duty and acted negligently by:

    a. Failing to keep Mr. Teague under a special watch;

    b. Failing to supervise Mr. Teague;

    c. Failing discover Mr. Teague was suffering from a medical emergency;

    d. Failing to provide appropriate medical treatment;

    e. Failing to timely contact emergency medical services;

    f. Failing to secure emergency medical care from a licensed physician;

    g. Failing to timely transport Mr. Teague to the hospital emergency department after it was clear that Mr. Teague was experiencing cardiac arrest;

    h. Violating their affirmative obligation under N.C.G.S. § 153A-224 to provide continuous custodial supervision of detainees and to secure emergency medical care for Mr. Teague;

    i. Violating North Carolina's Administrative Code, including 10A NCAC 14J .0601;

    j. Failing to implement a reasonable policy and practice regarding pretrial

confinement, inmate supervision, and/or inmate medical care;

    k. Failing to follow one or more written rules, statutes, regulations, policies, and/or procedures applicable to Defendants and their agents regarding pretrial confinement, inmate supervision, and/or inmate medical care;

    l. Failing to act in accordance with the standards of care for their profession; or

    m. Acting in such other ways as may be demonstrated at trial.

55. Defendants' conduct as described herein constituted negligence, gross negligence, and/or negligence *per se*.

56. As a direct and proximate result of the Defendants' acts, omissions, negligence and/or gross negligence as described herein, Dillon Raymond Teague suffered severe and permanent personal injuries, incurred medical expenses, endured much pain and suffering, and ultimately died. Decedent's injuries were a direct and foreseeable result of the Defendants' negligence. Plaintiff is entitled to all damages identified by North Carolina's Wrongful Death Act, including:

    a. Expenses for treatment and hospitalization incident to the injury resulting in death;

    b. Compensation for pain and suffering of the decedent;

    c. The reasonable funeral expenses of the decedent; and

    d. The present monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected income of the decedent, services, protection, care and assistance of the decedent, society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered.

57. Plaintiff has suffered damages in excess of $75,000.00.

10

Case 3:24-cv-00715-FDW-DCK    Document 1    Filed 08/02/24    Page 10 of 14

58. Plaintiff is entitled to treble damages as provided by N.C.G.S. § 162-55.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Fourteenth Amendment Violation

59. Plaintiff incorporates by reference and relies upon each of the prior allegations as if fully set forth herein.

60. Defendants are "persons" and their actions and omissions complained of herein were taken under color of state law for purposes of 42 U.S.C. § 1983.

61. The rights of pre-trial detainees and the conduct of Defendants are governed by the due process clause of the Fourteenth Amendment, which sets a standard of objective reasonableness.

62. The practice in the jail of failing to supervise inmates as required North Carolina's Administrative Code, including 10A NCAC 14J .0601, failing to provide medical attention to inmates in medical distress, and/or failing to have a written policy in place to ensure compliance with North Carolina law violated the standard of objective reasonableness.

63. Defendants also failed to train detention facility officers and other agents in recognizing and properly responding to pre-trial detainees' medical needs, which also violated the standard of objective reasonableness.

64. Further, the specific acts and omissions of Defendants complained of herein were objectively unreasonable and violated Mr. Teague's rights under the Fourteenth Amendment, including failing to provide appropriate medical treatment, failing to contact emergency medical services, failing to secure emergency medical care from a licensed physician, and/or failing to timely transport Mr. Teague to the hospital when he was suffering from cardiac arrest.

65. Further, those same specific acts described herein violated the Fourteenth Amendment standard of deliberate indifference. These acts included, but are not limited to, failing to appropriately supervise Mr. Teague, failing to provide appropriate medical treatment, failing to contact emergency medical services, failing to secure emergency medical care from a licensed physician, and/or failing to timely transport Mr. Teague to the hospital when he was suffering from cardiac arrest.

66. Further, Mr. Teague was detained under conditions that posed a substantial risk of serious harm, and Defendants knew of and disregarded those risks to Mr. Teague's health and safety, including hearing, seeing, and ignoring indicators of cardiac arrest, which violated Mr. Teague's Fourteenth Amendment rights.

67. In addition and/or in the alternative, the actions and omissions of Defendants complained of herein showed reckless disregard and open contempt for Mr. Teague's well-being and safety and constituted deliberate indifference. Defendants' actions and/or omissions violated Mr. Teague's right to substantive due process also protected by the Fourteenth Amendment.

68. As a direct and proximate result of the Defendants' acts and/or omissions as described herein, Dillon Raymond Teague suffered severe and permanent personal injuries, incurred medical expenses, endured much pain and suffering, and ultimately died. Decedent's injuries were a direct and foreseeable result of the Defendants' acts and/or omissions.

69. Plaintiff seeks and is entitled to compensatory damages as allowed under 42 U.S.C. § 1983 and N.C.G.S. § 28A-18-2.

70. Plaintiff has suffered damages in excess of $75,000.00.

71. Plaintiff is entitled to treble damages as provided by N.C.G.S. § 162-55.

## THIRD CLAIM FOR RELIEF
## 42 U.S.C. § 1983/Monell Violation

72. Plaintiff incorporates by reference and relies upon each of the prior allegations as if fully set forth herein.

73. Defendants were responsible for the formulation and execution of policies regarding the conditions of confinement of pre-trial detainees at the Gaston County jail.

74. At all relevant times, Defendants were acting under color of state law, had in effect de facto practices and customs that were a direct and proximate cause of the wrongful, unconstitutional, and unlawful conduct of officers at the Gaston County jail.

75. Defendants maintained a custom or practice of failing to follow direct observation rules, supervision rules, and failing to have adequate staffing at the jail.

76. This custom or practice is evidenced by some of the examples provided herein and the deaths of four inmates within a four-month period of time. These four deaths were a direct and proximate result of Defendants' failure to properly supervise inmates in the Gaston County jail, failure to ensure compliance with the standards of the profession, failure to provide medical attention to those requiring urgent assistance, failing to adequately staff the Gaston County jail, and failing to adequately train staff at the Gaston County jail.

77. Defendants' custodial staff acted in an overtly reckless manner to suggest that Defendants maintained a custom and practice of deliberate indifference.

78. As a direct and proximate result of said practices and customs, Mr. Teague was denied his rights under the Fourteenth Amendment.

79. As a direct and proximate result of the Defendants' acts and/or omissions as described herein, Dillon Raymond Teague suffered severe and permanent personal injuries, incurred

medical expenses, endured much pain and suffering, and ultimately died. Decedent's injuries were a direct and foreseeable result of the Defendants' acts and/or omissions.

80. Plaintiff seeks and is entitled to compensatory damages as allowed under 42 U.S.C. § 1983 and N.C.G.S. § 28A-18-2.

81. Plaintiff has suffered damages in excess of $75,000.00.

82. Plaintiff is entitled to treble damages as provided by N.C.G.S. § 162-55.

**WHEREFORE**, Plaintiff demands judgment, jointly and severally, of and from the Defendants as follows:

1. For compensatory damages in excess of $75,000.00 as to each claim for relief;
2. For treble damages in accordance with N.C.G.S. § 162-55;
3. For a trial by jury on all the issues;
4. For all costs incurred including a reasonable attorneys fee as provided by law, including 42 U.S.C. § 1988;
5. For judgment interest at the legal rate;
6. For such other and further relief as the Court deems just and proper.

This is the 2nd day of August 2024.

        */s/ Thomas D. Bumgardner*
        Thomas D. Bumgardner
        *Attorney for Plaintiff*
        N.C. Bar 38064
        Law Office of Thomas D. Bumgardner, PLLC
        13925 Ballantyne Corporate Place, Suite 280
        Charlotte, NC 28277
        Phone: (704)-887-4981
        Fax: (704)-496-2280
        Email: thomas@ballantynelegal.com